You are in the 1st District Appellate Court, 2nd Division. Your panel today is me, Terry Lavin, along with Justices Aurelia Paczynski and Cynthia Cobbs, and we're here to hear oral arguments in People v. Michael Mason, 17-2124. And the way we do things these days with Zoom is to give each side an uninterrupted period of time for their arguments, so make sure you get all the arguments out you want. Typically that's about 10 minutes, and then after that we will ask some questions, and the appellant has 5 minutes for rebuttal. So let's start by identifying the parties who are going to argue for the appellant and for the appellee. My name is John Burfell, I'm here for Michael Mason, the defendant appellant. Okay. And for the people? Good morning, Your Honors, Counsel, my name is Mylance Kelleher, on behalf of the people. Okay. Thank you both for being here today remotely, albeit, and we will start with the appellant, defendant appellant. Thank you, Your Honor. Good morning, and may it please the Court. My name is John Burfell, I represent Michael Mason, the defendant appellant in this appeal. This is a due process ex post facto apprendee case that on its face, it may seem complicated, but it's really quite much simpler than it seems. Mr. Mason was originally charged with four individual acts of sexual misconduct, but the charging period for each individual act straddled a change in the sentencing law such that if the act underpinning each count occurred at the beginning of the charging period, Mr. Mason could have been sentenced to three years of MSR, but if the act occurred at the end of the charging period, Mr. Mason had to be sentenced to three years to life on MSR. This is no small matter since in Illinois, defendants who also must register as sex offenders often have to serve all of their MSR in prison. The catch in this particular case was that although the alleged act occurred over a period that straddled a change in the sentencing law, at trial, the state never proved beyond a reasonable doubt, and the Court never found, certainly, that the alleged act underpinning his two convictions, he was convicted and sentenced on two of the four counts, the alleged act underpinning those two convictions was never proven to occur after the change in the sentencing law. Nevertheless, Mr. Mason was sentenced as if he committed these particular individual acts after the law had changed. As a result, we have a record that establishes no particular timeframe, no specific timeframe for when the act occurred vis-a-vis the change in the sentence, and Mr. Mason, who ultimately was sentenced to three years to life on MSR, may now be serving a sentence that was not authorized for the act that he was convicted of committing. And so, in our view, this is a clear constitutional violation, and the remedy is to send the case back to the trial court to allow Mr. Mason to elect to either be sentenced under the law that existed when the act may have occurred or the law that existed when the trial occurred. As an alternative, since he's going to elect to take the three years of MSR instead of three years to life for the sake of judicial economy, and given what the lower court has to deal with at this particular moment, this court could also just reduce his sentence on each count to three years of MSR. But either way, we believe that because the record does not clearly establish that he committed the acts underpinning his convictions after the law allowed for three years to life on MSR, and since it's possible that those convictions are premised on acts that occurred before the change in the law, that it's a due process, ex post facto violation for him to have to serve three years to life on MSR. If this court has any questions, I'm certainly happy to answer them. If not, I'd like to reserve my time for rebuttal. Okay. I have no questions. How about my colleagues? I just have one. This is a continuing offense, is that correct, or are we reading the record correctly to the time, commencing when the victim was approximately four years old and extending until there was a move to another state? No, Your Honor, and I understand that's the state's argument that it's charged a continuing offense, but the indictments are clear. They charged two wit and act of sexual misconduct in each individual count. That gave Mr. Mason notice that he was being charged with an act. There's no way to read those two words as being a continuing offense. If the state wanted to charge a continuing offense, it certainly could have done that. It could have charged him with repeated acts or multiple acts, but it didn't do that. It charged him with an act, and then it gave a date range, which simply signifies that it couldn't break down the date where that act actually occurred with any more specificity than the range that it gave. I suppose a good way to analogize this to a different potential situation is if homeowners are out of a home and somebody burglarizes the home, the state can charge that person with a burglary, and then it may give a date range, but that doesn't mean that it's a continuing offense. That doesn't mean that the home was being constantly burglarized necessarily. It just means that the defendant has been charged with one count of burglary, one act of burglary, and the state couldn't narrow down the specifics as to when it occurred. That's what I think what we're looking at here. The state charged Mr. Mason with an act in count one, an act in count two. For those reasons, it's not a continuing offense. The state now may wish that it were. It may wish it had charged the case differently, but it didn't, and that was the notice that was given to the defendant, Your Honor. Is that what you actually defended against that trial, one act? Well, I think the defendant at trial went to trial to defend against an act, to defend against the charge in the indictment. I think that's fair to say. I don't know if the state knew what the particular child victim in this case was going to testify to. I'm not sure. The record certainly doesn't establish that the state disclosed its theory well in advance, and what it did have was an admission, it was a challenged admission, but an admission by the defendants to one act, so I think there was a reason for the state to proceed on theory that there was one act, but ultimately it had testimony that there were multiple acts. That was challenged by the defendant, who also testified at trial that none of these acts occurred, and that was challenged by his family. But the state's ultimate theory at trial is very different from the notice of the charge that it gives to the defendant, and that is specific, and that's in the charging document. Here, the charging document provided him with notice of an act, and simple English, plain reading of that is an individual act, not a continuing set of events, not a continuing offense. One final question, was there any motion, pre-trial motion to quash the indictment? Not that I know of, Your Honor. No further questions. Thank you, Justice Levin. Okay, let's hear from the appellate, the people. Mr. Kelleher. Thank you, Your Honors, Counsel, Miles Kelleher, on behalf of the people. May it please the court. The record supports a finding beyond a reasonable doubt that the offense is continued past the date of the statutory amendment on July 1st, 2005. This was a continuous course of conduct offense, and the state proceeded on the theory that the defendant had engaged in a continuous course of aggravated criminal sexual assault against the victim from May 2005 through the spring of March 2007. When the evidence is viewed in the light most favorable to the prosecution, it established that defendant repeatedly sexually assaulted the victim, and the assaults continued past July 1st, 2005. Now from the earliest date in the indictment, which was May 27th of 2005, until the date of the statutory amendment, July 1st of 2005, only 35 days passed between the earliest date alleged and the date of the amendment. And then there was another 609 days until the last date charged in the amendment, in the indictment, I'm sorry. Okay. So when you look at the victim's testimony that there were at least 10 sexual assaults on different occasions, spanning nearly a year, there's no reasonable probability that all 10 of these sexual assaults would have occurred within that initial 35 day time period before the amendment. The victim testified that during this period of time when she was in Chicago, living with her mother, she would visit with her father every other weekend. And the father would often take the victim to the defendant's house where she would be with the defendant's sister, Melissa. While she was at the house, she basically had free reign of the house. She could go upstairs, downstairs, she could go into defendant's bedroom, and she wasn't always being watched by the babysitter. Now the victim testified on at least 10 occasions, defendant took her into his bedroom alone, and he took off the victim's clothes. And on at least 10 occasions, defendant had oral sex with the victim. Defendant would put his mouth on the victim's vagina. And on other occasions, the victim would put her mouth on defendant's penis. Sometimes defendant would have the victim rub his penis. Sometimes the defendant would get on top of the victim and rub his naked genitals against the victim's genitals. The victim described this as defendant grinding against her, and she testified that sometimes it would hurt. And she testified that these sex assaults occurred almost, continued on almost an entire year. Now the trial court viewed the victim on the stand, and the trial court found her testimony to be very credible. The court explicitly said that it found the victim to be a very credible witness. So the court not only believed that these sexual assaults occurred, but that they occurred continuously on at least 10 occasions. Now, it's important, the mother's testimony is important because she corroborates parts of the victim's testimony. She testifies that the victim complained of vaginal pain during the period of time between 2005 and spring of 2007. But she also testifies that after she moves to Detroit with the victim, the victim no longer complains of vaginal pain. Now the mother didn't know what was going on. She thought, well, maybe it's a hygiene issue. She didn't have it checked out any further. But her testimony supports a reasonable inference that defendant's recurring acts of sexual assault, including the grinding that the victim described, was causing the victim's vaginal pain. And it's a reasonable inference that once the defendant no longer had access to the victim, the vaginal pain stopped. And this is powerful corroboration by the mother, and the mother's testimony helps to put a time frame on this as to when the offenses occurred. Now in the case of McDade, the appellate court held that a continuous course of conduct is not complete until the last act is accomplished. So in this case, the continuous course of conduct did not occur until the last act. And when you look at all the testimony, especially the victim's testimony that this occurred on at least 10 occasions and lasted nearly a year, corroborated by the evidence that she had vaginal pain and that she stopped complaining of vaginal pain once she moved to Detroit. This all can be viewed in totality as supporting a finding beyond a reasonable doubt that these offenses occurred well past the date of the statutory amendment on July 1st, 2005. This is not a case where we had one single act. If that was the case, my argument would be different. This is a case of continuing sexual assaults on numerous occasions. And that's how this court must view the evidence in the light most favorable to the prosecution. As a result of all this evidence, establishing that there's no way all these events could have occurred prior to July 1st, 2005, defendant is not entitled to be sentenced under the earlier MSR law. Therefore, the trial court properly imposed a mandatory supervisory release term for the defendant to receive a maximum of three years to life. Okay. No questions for me. My colleagues. Justice Cobbs? Fix your audio. Cynthia, undo your audio. Thanks, Orie. Justice Kaczynski.  Was the indictment amended? I have something in the record to suggest that it was not amended. prior to trial, the state motioned to amend the indictment to allege that the offenses occurred between 2005 and 2007. Am I misreading something in the record? It's 2005. I'm sorry. Thank you. Yes, Your Honor. The indictment was amended. The dates that were alleged were changed. It was originally from May, I'm sorry, January 1st of 2007 to May 5th of 2007. And it was amended to allege the dates of May 27th, 2005, continuing on through March 1st of 2007. And there was no objection by the defense when that amendment was made. Thank you. I have no further questions. Okay, we'll now hear from Eppley, excuse me, Appellant. Thank you, Your Honor. A few things. The state has repeatedly said that this is a light, most favorable to the state case. That's the standard of review for reasonable doubt claims. This is an Apprendi Ex Prospecto claim. The review here is de novo. And the question is, did the state prove beyond a reasonable doubt that the act underpinning Mr. Mason's conviction in each count occurred after the change in the sentencing law? And I think what's important here to remember is that the state really is shifting, it's moving the goalposts, it's shifting its legal theory. It charged the case originally as an act, and I'm reading directly from the indictment, it says, in that he being under the age of 17, knowingly committed, quote, an act of upon ZW. Not multiple acts, not 10 acts, an individual singular act. And so what we're looking at here is testimony which could have resulted in Mr. Mason's conviction for an act that occurred before the statute was amended. And he may be serving a sentence for that act that was not authorized until after the act occurred. Now, to be sure, the state could have charged this differently. It could have charged an act for each type of conduct from May until the date of the sentencing amendment, July 11th, and then an act for each type of conduct afterwards. And then it would have been very clear what the court was choosing from. It could have convicted on one or the other or both. The state could have charged it as repeated acts, straddling the amendment, and then gone to trial on that theory. But it didn't. It didn't. It gave the defendant notice that he was being charged with an act for each type of sexual misconduct and in a date range. And now, as a result, we don't know which act he was convicted of committing. And so the state may wish and hope that it is an act that occurred after the sentencing statute was amended, but it very well may be an act that was committed before the sentencing statute was amended. And therefore, if that's the case, we have a defendant who's serving a sentence that wasn't authorized by the law at the time that the act was actually committed. I have no other nothing else to add to that, your honors, unless the court has any additional questions. None here. Anybody else? I just want to I just want to make sure I understand. So you're saying that the defendant feels that between May of 2005 and May and July of 2005, everything that this child testified happened to her happened in those 60 days. And that's why this is an illegal. Sentence. And we're and we're we are we are not supposed to look at this entire record de novo and say, wait a minute, this child testified that there were 10 instances when she was five. Between a period of time of May 2005 and sometime in 2007. And so you're trying to tell us that all 10 of those happened between May of 2005 and July of 2000, July 1st of 2005. No, your honor. That's not the argument that we're making. That's the argument that the state, I think, wishes that we make that we are trying to prove that all of the acts occurred exclusively before the amendment. What we're arguing is that the state did not prove that all of the acts occurred after the statute was amended. And that's a critical that's a critical distinction, because what we're talking about is a conviction for an individual singular act. And the state provided the court with evidence suggesting that the act occurred sometimes before and sometimes after the sentencing statute was amended and then by its charging document, asked the courts to pick one of those acts and enter a conviction. And so the court necessarily did that. It picked an act and entered a conviction. But the state never proved that the that any individual act that the court picked for the conviction occurred before or after the sentencing statute was changed. And so our burden is not to prove that all of the acts occurred exclusively before the sentencing statute was amended. That's the burdens on the state to prove that the act for which the defendant was convicted in this case occurred after the sentencing statute was amended, in which case since it prevent since it presented evidence of 10 acts, then this court would have to find that all 10 acts were proven to have been occurred after the sentencing statute was amended. Because otherwise, we just don't know if if if a few of those acts occurred before the basis for the conviction, then you have a defendant who's been convicted of committing an act and sentenced pursuant to a law that didn't exist when that act occurred. Just one more, Justice Levin, and I'll be done. You would agree that there are certain inferences that may be drawn from the evidence that was presented. Sure, I guess that's always the state. Rarely, there's there's almost never a trial where it's it's obvious that everything occurred and both sides are asking the court to draw inferences based on their testimony evidence presented, Your Honor. Thank you so much. Thank you. OK, I'd like to thank the parties for your briefs and your arguments, and thanks for putting up with this form of jurisprudence as we get through what they call these challenging times. Have a great day and we will be back to you with an opinion within the next couple of weeks. OK, thank you very much.